UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CIV-62224-GAYLES
MAGISTRATE JUDGE P.A. WHITE

OLADOTUN ORUKOTAN,                 :

    Petitioner,                :

v.                                 :          REPORT OF
                                              MAGISTRATE JUDGE
JULIE JONES,                       :

    Respondent.                :
_____

## Introduction

Oladotun Orukotan, who is presently confined at Hardee Work
Camp in Bowling Green, Florida, has filed a pro se petition for
writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his
conviction and sentence in case number 071612-CF-10B, entered in
the Seventeenth Judicial Circuit Court of Broward County.

This cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2254 Cases in the
United States District Courts.

The court has before it the petition for writ of habeas corpus
[DE#1], and Respondent's response to an order to show cause and
appendix of exhibits [DE#11].

## Claims

Ground One:    Restrictions on previous drug usage by
Laurel Davis and Jessica Rothfteld (sic)
effectively gutted Petitioner's defense
and denied him his Sixth and Fourteenth
Amendment Rights under the U.S.
Constitution to Due Process and a fair
trial.

Ground Two:    Petitioner was denied effective assistance of counsel under Article I Section 16 Of The Florida Constitution and The 6th Amendment to the Constitution of the United States where defense counsel failed to move for and, or, accept a mistrial subsequent to the prosecutor's discovery violation, which the trial court determined to be both substantial and prejudicial.

Ground Three:    Petitioner was denied effective assistance of counsel under Article I Section 16 of the Florida Constitution and the Sixth Amendment to the Constitution of the United States where defense counsel failed to properly advise Petitioner as to the consequences of pleading guilty and improperly induced him not to accept the prosecution's plea offer before it expired.

Ground Four:    Petitioner was denied effective assistance of counsel under Article I, Section 16 of the Florida Constitution and the Sixth Amendment to the Constitution Of The United States where defense counsel failed to move to dismiss the charge of burglary, or otherwise object to Petitioner being charged and found guilty of violating previous statutory language of 810.02, where the State failed to provide any evidence of a "remaining in" burglary.

Ground Five:    Petitioner was denied effective assistance of counsel under Article I, Section 16 of the Florida Constitution and the Sixth Amendment to the Constitution of the United States where defense counsel failed to properly confer with Petitioner concerning accepting or rejecting the State's ten (10) year plea offer after the court offered the Hobson's choice.

<u>Procedural History</u>[1]

Petitioner was charged with burglary of a dwelling while armed, kidnapping while armed with a firearm, and three counts of robbery with a firearm. (DE#11, App.2). The charges stemmed from a home invasion, wherein Petitioner and his co-defendant stormed the apartment of a victim that Petitioner knew from previous drug transactions, bound the victim and put a pillowcase over his head while they robbed him, robbed the victim's sister and her friend also when they walked in on the crime and confined all three victims to a bathroom during the ordeal, and then unbound the victim when police arrived and instructed the trio to act as if the group were merely "hanging out" and "partying together." <u>See</u> <u>Orukotan v. State</u>, 85 So.3d 542, 543-44 (Fla. 4th DCA 2012).

Petitioner and his co-defendant were tried together. <u>Id.</u> at 544. The jury convicted Petitioner of armed burglary, armed kidnapping of the victim, and three counts of armed robbery. <u>Id.</u> The trial court then sentenced Petitioner to eighteen years in prison concurrent on each count, with a mandatory ten-year minimum on the robbery and kidnapping charges based on Petitioner's possession of a firearm. <u>Id.</u>

Petitioner appealed his convictions and sentences, raising multiple issues. <u>Id.</u> at 543. Of those, the Court of Appeal found merit only in Petitioner's challenge to his conviction and sentence for kidnapping. <u>Id.</u> Specifically, the Court of Appeal concluded that there was insufficient evidence to prove that Petitioner and his co-defendant kidnapped the victim to facilitate their robbery. <u>Id.</u> More specifically, the Court held that, pursuant to Florida law, because the confinement ended prior to the completion of the robbery, the evidence did not support an independent crime of

---

[1]The relevant procedural history of Petitioner's underlying criminal case is not in dispute. A detailed recitation thereof, with citations to the record, can be found in Respondent's response.

kidnapping.  Id. at 547.  The Court of Appeal thus reversed and remanded the case to the trial court to vacate that sentence.

On remand, the state trial court re-sentenced Petitioner to fifteen years in prison concurrent on the armed burglary and armed robbery charges, with a mandatory minimum of ten (10) years based on Petitioner's possession of firearm.  (DE#11, App.13). Thereafter, Petitioner unsuccessfully pursued post-conviction relief in the state courts.  (See DE#11, pp.4-10).  Then, on September 11, 2016, Petitioner filed the instant federal petition for writ of habeas corpus,[2] which Respondent concedes is timely filed.

### Exhaustion

It is well-settled that a state prisoner must exhaust his state remedies prior to challenging his conviction in a habeas petition filed in federal court.  See 28 U.S.C. §2254(b),(c); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)(explaining that the exhaustion requirement is a rule of comity designed to provide the state courts with an opportunity to correct the alleged constitutional violation in the first instance).  State prisoners are therefore required to first "present the state courts with the same claim [they urge] upon the federal courts" prior to seeking relief on federal habeas review. Picard v. Connor, 404 U.S. 270, 275 (1971).

When a state allows review of a constitutional violation either on direct appeal or by collateral attack, a prisoner need only exhaust one avenue before seeking habeas corpus relief. Turner v. Compoy, 827 F.2d 526, 529 (9th Cir. 1987).  A state

---

[2]Prisoners' documents are deemed filed at the moment they are delivered to prison authorities for mailing to a court, and absent evidence to the contrary, will be presumed to be the date the document was signed.  See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); see also Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(setting forth the "prison mailbox rule").

prisoner thus satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 845. In sum, the exhaustion requirement is satisfied when a federal claim is fairly presented to the state's highest court, either on direct appeal or on collateral review. Reedman v. Thomas, 305 Fed.Appx. 544, 545 (11th Cir. 2008)(citing Castille v. Peoples, 489 U.S. 346, 351 (1989)).

The exhaustion requirement is also satisfied when a federal claim has not been presented (or fairly presented) to the state court, but it is clear that the claim would be prospectively procedurally barred under state law. Gray v. Netherland, 518 U.S. 152, 161-63 (1996)(citations omitted). In such a case, the petitioner no longer has a state-court remedy available within the meaning of §2255(b), and the procedurally barred claim will thus be deemed exhausted by the federal courts. Id.[3] In keeping with the same rationale, the exhaustion requirement is further satisfied when a federal claim has in fact been presented to the state courts, but explicitly rejected on state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)(a habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, since there are no state remedies any longer "available" to him). In both instances, however, the state procedural bar that gives rise to exhaustion may also provide an independent and adequate state-law ground for the conviction and sentence, and thereby preclude federal review of the procedurally defaulted claim. See Gray, 518 U.S. at 161-62; Coleman, 501 U.S. at 729 n. 1, 730-31.

---

[3]These claims will also be deemed procedurally defaulted by the federal courts, since the state courts would find them to be procedurally barred under state law. See Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008); Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1984).

Finally, the Supreme Court has held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982).

Standard of Review[4]

---

[4]Petitioner couches all his claims of ineffective assistance of counsel in terms of violations of both the Florida and United States Constitutions. It is of course well-settled that, when a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam). "It is established that '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a [federal] constitutional nature is involved.'" Machin v. Wainwright, 758 F.2d 1431, 1433 (11th Cir. 1985)(citations omitted). Therefore, the Court will not address whether counsel's performance violated Florida law. However, it bears noting that, following the test set out by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), the Florida Supreme Court has held that there are two requirements for sufficiently alleging a claim of ineffective assistance of counsel:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clearly, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.

Ferrell v. State, 29 So.3d 959, 969 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Therefore, because Florida courts apply the same standard as federal courts to claims of ineffective assistance of counsel, Petitioner is effectively obtaining review of his Florida claims of ineffective assistance of counsel as well.

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001). A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. A federal court must presume the correctness of the state court's factual findings, unless the petitioner overcomes them by clear and convincing evidence. See, 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. See Early v. Packer, 537 U.S. 3, 8 (2002). To obtain habeas relief on a claim of ineffective assistance of counsel, the petitioner must show that the state court applied Strickland an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).[5]

---

[5]To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "To establish deficient performance,

It is well-settled that a habeas petitioner must allege facts that, if proved, would entitle him to relief. See Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (noting that notice pleading is not sufficient for habeas petition) (citing Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases); Rule 2, Rules Governing § 2254 Cases (requiring petitioner to state "facts supporting each ground" and "relief requested"); see also Schriro v. Landrigan, 550 U.S. 465, 474-75, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). The pleading requirements for a petition for writ of habeas corpus under §2254 apply equally with regard to claims of ineffective assistance of counsel. Conclusory allegations of ineffective assistance of counsel are insufficient to state a claim. See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)(conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue). A petitioner's claims of ineffective assistance of counsel are thus subject to summary dismissal when they "are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(citations omitted). A habeas petitioner's claim of ineffective assistance of counsel will thus fail unless he affirmatively demonstrates both attorney error and resulting prejudice by alleging facts or specific details

---

a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1356 (11th Cir.2009). To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

to identify precisely how his attorney failed to fulfill his obligations. <u>See</u> <u>Spillers v. Lockhart</u>, 802 F.2d 1007, 1010 (8th Cir. 1986).

<u>Discussion</u>

In <u>Ground One</u>, Petitioner claims that restrictions on previous drug usage by Laurel Davis and Jessica Rothfteld (sic) effectively gutted Petitioner's defense and denied him his Sixth and Fourteenth Amendment Rights under the U.S. Constitution to Due Process and a fair trial.  In support of this claim, Petitioner alleges that, at trial, the state court sustained an objection regarding whether the victim's sister and her friend had ever used drugs together. Petitioner further alleges that the Court allowed the victim's sister's friend to testify regarding whether she and the victim's sister has used on the afternoon of the crime, which she denied. Petitioner further alleges that the state trial court further restricted his ability to cross-examine the victim regarding his Facebook profile, as well as the potential penalties that the victim himself and one of the detectives was facing.  Petitioner alleges that this hampered his ability to present a theory of defense that the victim was a drug dealer, that the victim's sister and her friend regularly smoked marijuana together, that victim's sister and her friend went to the victim's apartment to purchase marijuana on the day of the incident and not to give Petitioner a ride to pay his tuition, that the victim's sister and her friend's use of marijuana on the day of the incident would have impaired their ability to perceive the events of the day, and that all of this would give the victim, his sister, and her sister's friend a motive to make false allegations of a robbery.

Questions regarding the admissibility of evidence are matters of state law, generally not cognizable on federal habeas review. <u>See</u> <u>Engle v. Isac</u>, 456 U.S. 107, 119 (1982); <u>Lisenba v. California</u>,

9

314 U.S. 219, 228, 62 S.Ct. 280, 86 L.Ed. 166 (1941); <u>Sims v. Singletary</u>, 155 F.3d 1297, 1312 (11th Cir. 1998); <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1265 (11th Cir. 1992); <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11th Cir. 1983). Absent a federal constitutional violation, therefore, the Florida courts are the final arbiter of Florida evidentiary law. <u>See</u> <u>Mills v. Singletary</u>, 161 F.3d 1273, 1289 (11th Cir.1998), cert. denied, 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000); <u>Hunt v. Tucker,</u> 93 F.3d 735, 737 (11th Cir.1996)(per curiam). In cases where evidence has been excluded, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when the ruling was of such magnitude as to deny the defendant a fundamentally fair trial <u>See</u> <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1544 (11th Cir. 1984). To render a state-court proceeding fundamentally unfair, the excluded evidence must be "material in the sense of a crucial, critical, highly significant factor." <u>Id.</u> Moreover, such trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).

The Supreme Court of Florida has held that evidence regarding drug use for impeachment purposes is admissible if:

> (a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (c) it is expressly shown by other relevant evidence that the prior drug use affects the witness's ability to observe, remember, and recount.

<u>Edwards v. State</u>, 548 So.2d 656, 658 (Fla.1989). Here, review of the record reveals that this standard was not met. Thus, for the same reasons that the evidence was not admissible pursuant to Florida law, Petitioner cannot show that its exclusion was of such magnitude as to deny the defendant a fundamentally fair trial <u>See</u>

10

Boykins, 737 F.2d at 1544.  The same can be said of the trial court's restriction on the attempted inquiry into the victim's Facebook profile.  Petitioner fails to explain how or why the victims would have thought that claiming that they were being robbed would have exonerated them from any independent wrong-doing.

With regard to this issue, review of the record reveals that Petitioner's counsel effectively argued that the government had not proven their case beyond a reasonable doubt because of all the "lies repeated over and over again from many witnesses," that the victim made up the story about going to pay his tuition because none of the witnesses wanted to say why they were really there, that the victim had a "knot in his pocket, almost a grand," that the victim's sister's friend did not mention the tuition story to police because she was "too high to remember," that the victim shot himself in order to concoct the story of the robbery and cover the fact that he "had drugs all over the place," and that "everybody . . . is saving their butts, because they got to stick to the same story.  Because if they don't . . . tell the statement the way it is supposed to go down, they could all get in trouble."  (See DE#11, App.3, Transcript, pp.1644-1652).  Under these circumstance, it certainly cannot be said that the state trial court's restriction on defense counsel's attempt to impeach the victim's sister and her friend regarding their drug use and or defense counsel's failed attempt to go into the victim's Facebook profile "had a substantial and injurious effect or influence in determining the jury's verdict."  As such, Petitioner is not entitled to federal habeas relief on this claim.  See Brecht, 507 U.S. at 623 (state trial court evidentiary errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error had substantial and injurious effect or influence in determining the jury's verdict).

In <u>Ground Two</u>, Petitioner claims that he was denied effective assistance of counsel under Article I Section 16 Of The Florida Constitution and The 6th Amendment to the Constitution of the United States where defense counsel failed to move for and, or, accept a mistrial subsequent to the prosecutor's discovery violation, which the trial court determined to be both substantial and prejudicial.   In support of this claim, Petitioner alleges as follows:

> Defense counsel, at trial, filed a joint motion in limine for the court to exclude as evidence any and all testimony concerning a projectile found at the scene of the crime, arguing the projectile was not relevant because it had not been submitted for testing and it was impossible to determine from what weapon it had been fired. The prosecutor had previously admitted she would not be able to elicit testimony as to from what weapon the projectile had been fired.

> In response to the joint defense motion and on the 7th day of trial, the prosecutor, despite the fact that two years earlier she was told the projectile was not suitable for testing, approached her expert with their projectile and was subsequently told by her expert that the projectile could in fact be tested. Later that date, the projectile was tested and found to have been fired from the codefendant's weapon.

> A <u>Richardson</u> hearing was held and the trial court ruled that the late discovery of the forensic evidence concerning the projectile was material, substantial and prejudicial.[6]   The court ruled that the discovery violation to be inadvertent based on the fact that the

---

[6]In <u>Richardson v. State</u>, 246 So.2d 771 (Fla.1971) the Florida Supreme Court held that if the state fails to comply with a discovery rule, the court must conduct an inquiry into the circumstances of the violation in what has come to be known as a <u>Richardson</u> inquiry; i.e., the judge must conduct a hearing at which the state attorney has the burden of proving that the defendant was not prejudiced by the error.  <u>Richardson v. State</u>, <u>supra</u>; <u>Wilcox v. State</u>, 367 So.2d 1020 (Fla.1979); <u>Brown v. State</u>, 485 So.2d 413 (Fla.1986).  "A <u>Richardson</u> inquiry is designed to ferret out procedural prejudice resulting from the prosecutor's noncompliance with the discovery rules."   <u>Distefano v. State</u>, 526 So.2d 110, 114.   Pursuant to <u>Richardson</u> the trial judge must first decide whether the discovery violation prevented the defendant from properly preparing for trial and, if so, determine a just and proper sanction.  <u>Id.</u>

prosecutor was unaware that the crime lab had the ability to test the projectile until that point in time.

Defense counsel requested that the evidence be excluded, alleging prejudice in that their theory of defense was a lack of evidence, that the victim had accidentally shot himself, and that they had voir dired the jury and cross-examined the prosecution witnesses based on the prosecutor not being able to tie the projectile to any weapon in the possession of either defendant.

The trial court denied the motion to exclude the forensic evidence concerning the projectile. Rather, the court considered other remedies such as recalling the prosecution's previous witnesses so that defense counsel could cross-examine them in light of the new forensic evidence, granting a continuance so that the defense could obtain their own ballistics expert, allowing Petitioner to accept the plea offer that had been extended by the prosecutor, or moving for a mistrial. The trial court also further informed defense counsel and all parties that 'case law indicating to me that the remedy the Court should look at is upon request for a mistrial.' (R. 1352, 20-22).

Ultimately, defense counsel did nothing. Defense counsel advised the court that he did not wish to have the witnesses recalled, that he did not wish to have a continuance to hire ms (sic) own expert, and that he did not move or accept a mistrial.

Petitioner then goes on to allege that defense counsel was ineffective in failing to accept the remedy offered by the trial court and move for a mistrial, in failing to discuss with Petitioner the legal ramifications of a mistrial and the benefits under the circumstances, and in failing the issue for appellate review. Petitioner also alleges that exclusion of the evidence, as counsel requested, was not the proper remedy under Florida law. According to Petitioner, counsel should have known that the Florida Supreme Court had recognized that relevant evidence should not be excluded unless no other remedy would suffice, and that the alleged substantial prejudice could not be cured by recalling the witness

or having the case continued for Petitioner to retain his own expert.   Rather, Petitioner contends that the proper course of action would have been to accept a mistrial.

Respondent argues that this claim is procedurally barred because the state court concluded in Petitioner's 3.850 proceeding that Petitioner was essentially attempting to raise a claim of trial court error, that such errors must be raised on direct appeal and that, as such, Petitioner was barred from raising such trial court error in a motion for post-conviction relief.   The Court finds this argument to be patently frivolous.   Review of Petitioner's motion for post-conviction relief (DE#11, App.14) reveals that Petitioner raised almost verbatim the same claim of INEFFECTIVE ASSISTANCE OF COUNSEL that he raises herein.   The fact that the State argued in response to that motion that Petitioner was really trying to raise a claim of trial court error and that the state trial court bought this argument does not make it so.   It is well-settled that "claims of ineffective assistance of counsel are [generally] not cognizable on direct appeal." Eaglin v. State, 19 So. 3d 935, 945 (Fla. 2009), as revised on denial of reh'g (Oct. 8, 2009) (*citing* Bruno v. State, 807 So.2d 55, 63 (Fla.2001); see also Massaro v. United States, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (noting that an appellate court generally cannot adequately decide an ineffective-assistance-of-counsel claim raised for the first time on appeal); Martinez v. State, 761 So.2d 1074, 1078 n.2 (Fla.2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); McKinney v. State, 579 So.2d 80, 82 (Fla.1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); Kelley v. State, 486 So.2d 578, 585 (Fla.1986) (same); State v. Barber, 301 So.2d 7, 9 (Fla.1974) (holding that claims of ineffective assistance of

14

counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue).

Moreover, the record reveals that this is one of those rare instances where appellate counsel did raise this claim of ineffective assistance of trial counsel on direct appeal, arguing that in Petitioner's case the ineffectiveness was demonstrated on the face of the record. (DE#11, App.8). See Stewart v. State, 420 So.2d 862 (Fla.1982)(claims of ineffective assistance of counsel are generally brought by a Rule 3.850 motion; however, these claims may be brought by direct appeal when the ineffectiveness is apparent or obvious from the face of the record). And in response, the State argued that, because claims of ineffective assistance of counsel are generally not cognizable on direct appeal, that "[t]he proper vehicle for a claim of ineffective assistance of counsel is a motion for post-conviction relief made pursuant to Rule 3.850"! (DE#11, App.9).

In sum, Respondent wants to have its cake and eat it too. First, Respondent argued in response to Petitioner's direct appeal that any complaints regarding how counsel handled the discovery violation was an issue for post-conviction review.  On post-conviction review, however, Respondent then apparently persuaded the state trial court that Petitioner's motion for post-conviction relief raised a claim that Petitioner should have raised on direct appeal.  And now Respondent argues that Petitioner should be procedurally barred in this forum as a result.

The Court need not countenance this troubling legal maneuvering.  See 1B J. Moore, Moore's Federal Practice ¶ 0.405[8] at 239-240 (1984)(defining the doctrine of judicial estoppel and one properly invoked by courts against those parties that appear to be "play[ing] 'fast and loose' with the judicial process"). Section 2254(b)(2), as amended by the AEDPA, permits a federal

court to deny on the merits a habeas corpus application containing unexhausted claims.[7]   See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D.N.Y. 1997); Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).   If it is "perfectly clear" that the Petitioner has failed to state "even a colorable federal claim," the competing policy considerations underlying the exhaustion requirement are best served by the district court denying the petition on the merits.   See Granberry v. Greer, 481 U.S. 129, 134-35, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); see also Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992)(applying Granberry).[8]   Moreover, judicial economy sometimes dictates reaching the merits, if the case is otherwise easily resolvable against the defendant on the merits.   See, Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits, if the merits are easily resolvable against a petitioner), cert. denied, 528 U.S. 846 (1999); see, also, Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best."). And as set forth above, the same policy considerations underlie the exhaustion requirement and procedural default rule.   Coleman, 501 U.S. at 731-32.   Here, Petitioner's claims asserted in this ground is easily resolvable against him on the merits, and it is perfectly clear that Petitioner has failed to state even a colorable federal claim in these grounds.   Judicial economy and sound policy

---

[7]28 U.S.C. §2254(b)(2) provides:

> (b)(2) (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

[8]The Court recognizes that § 2254(b)(3) overrules Granberry to the extent that the state no longer may be deemed to waive the exhaustion requirement. The quoted passage, however, remains good law.  Indeed, the policies underlying it are directly incorporated into § 2254(b)(2).

16

considerations thus dictate denying this claims on the merits, even if it is unexhausted or procedurally barred. See Coleman, 501 U.S. at 731-32; Granberry, 481 U.S. at 134-35; Barrett, 169 F.3d at 1162; 28 U.S.C. §2254(b)(2).

With regard to the merits, as set forth above, after ruling that the testimony concerning the projectile was admissible but recognizing possible error, the Court discussed possible remedies with trial counsel. (DE#11, App.3, Transcript, pp. 1325-1388). The record reflects that trial counsel consulted with Petitioner and informed the trial court that Petitioner would not have taken the plea even with the new evidence (Id. at 1352), that Petitioner did not want a different jury (Id.), that they did not want a mistrial (Id. at 1352-1353), but that they would like time to consult with a firearms expert. (Id. at 1383). Moreover, both trial counsel and counsel for Petitioner's co-defendant made it known to the jury through cross-examination and during closing argument that the examination of the projectile was completed on November 19, 2009; exactly, "two days ago." (Id. at 1532-1533, 1585, 1640-1641, 1651).

In sum, the record reflects that trial counsel consulted with Petitioner at length regarding potential options like recalling the witnesses, accepting a renewed plea offer from the State, and the opportunity to have time to hire a firearms expert. And the record reflects that it was in consultation with counsel that the defense opted to continue with the same jury, and not exercise any of the options offered by the trial court (with the exception of consulting with a firearms expert).

As an initial matter, Petitioner fails to offer any reasons regarding how or why counsel's advice about on how to proceed was not within the exercise of reasonable professional judgment. As such, Petitioner cannot establish that counsel performed deficiently in the first instance. Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment"). Moreover, Petitioner fails to make any allegation that there is any reasonable probability that the result of the proceeding would have been different had counsel moved for a mistrial, specifically that he would not have been convicted at a re-trial.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. The Double Jeopardy Clause protects a criminal defendant from repeated prosecution for the same offense. Oregon v. Kennedy, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (citing United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)). The Double Jeopardy Clause clearly bars the re-prosecution of a criminal defendant on the same charges after a judgment of conviction or acquittal. United States v. Wilson, 420 U.S. 332, 342–43, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). However, the Clause "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in [only] one proceeding." Kennedy, 456 U.S. at 672.

When a trial is terminated over the objection of the defendant, double jeopardy bars re-trial unless there was "manifest necessity" for the jury's discharge. Richardson v. United States, 468 U.S. 317, 323–24, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); see also United States v. Perez, 22 U.S. 579, 280 (1824) ("We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."). However, the United States Supreme Court has concluded that in cases where the defendant has sought the mistrial, "the 'manifest necessity'

18

standard has no place in the application of the Double Jeopardy Clause." Kennedy, 456 U.S. at 672; United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (recognizing that a defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined by the first trier of fact."); United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) ("If Tateo had requested a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him.") (emphasis in original).

There is of course an exception to the general rule that retrial is not barred by double jeopardy when the defendant moves for a mistrial. Specifically, the Supreme Court has found that "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial[,] a defendant [may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Kennedy, 456 U.S. at 676.

However, a review of the record does not support a conclusion that the Kennedy exception applies in Petitioner's case. To the contrary, the record reflects that the Court found that there was no intentional discovery violation. (DE#11, App.3, Transcript, p. 1326)("it was not deliberate, it was inadvertent, because the State was not aware, even though the defense argued they should of been, the State was not aware of any ability for the crime lab to do that test."). Thus, had counsel moved for a mistrial, Petitioner would have been tried again, and Petitioner fails to make any allegation that there is a reasonable probability that the result of any such retrial would have been different. As such, Petitioner cannot establish prejudice on this claim. See Strickland, 466 U.S. at 693-94 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the

19

proceeding. Virtually every act or omission of counsel would meet that test, . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Finally, it bears re-iterating that the record reflects that Petitioner chose to forego the option of the mistrial after extensive consultation with counsel, as well as after consultation regarding other options offered by the Court.  And it is well-settled that reasonable strategic choices by counsel regarding the various plausible options in a given case are "virtually unchallengeable." Strickland, 466 U.S. at 690.  Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11th Cir. 1983).  Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")(quoting Darden v. Wainwright, 477 U.S. 168 (1986)); United States v. Costa, 691 F.2d 1358 (11th Cir. 1982; see also Foster v. Strickland, 707 F.2d 1339, 1343-44 (11th Cir. 1983)(stating that "Petitioner, who preempted his attorney's strategy choice, cannot now claim as erroneous the very defense he demanded [his attorney] present."), cert. denied, 466 U.S. 993 (1984).

In Ground Three, Petitioner claims that he was denied effective assistance of counsel under Article I Section 16 of the

Florida Constitution and the Sixth Amendment to the Constitution of the United States where defense counsel failed to properly advise Petitioner as to the consequences of pleading guilty and improperly induced him not to accept the prosecution's plea offer before it expired.   In support of this claim, Petitioner alleges that the State initially offered Petitioner a plea of three (3) years, and that counsel advised Petitioner to hold off on accepting it, advising Petitioner that the State must have had a "major hole" in its case to be making such a low offer.   Petitioner further alleges that the three-year plea offer later expired and that, by the time of trial, the offer was ten (10) years, which Petitioner rejected. According to Petitioner, but for counsel's misadvice to reject the three (3) year offer, Petitioner would have accepted it and would have been sentenced to three (3) years, instead of the ten (10) years he ended up getting after trial.

The Sixth Amendment guarantees a defendant the right to counsel present at all "critical" stages of the criminal proceedings. <u>Missouri v. Frye</u>, ---U.S. ----, 132 S.Ct. 1399, 1405, 182 L.Ed.2d 379 (2012)(internal citations and quotations omitted). Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea.   <u>Id.</u>   The Sixth Amendment right to effective assistance of counsel also extends to the plea negotiation context.   <u>Id.</u> at 1405-09; <u>Lafler v. Cooper</u>, --- U.S. ----, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012)(internal citations omitted).   The <u>Strickland</u> framework thus applies to advice regarding whether to plead guilty. <u>Hill v. Lockhart</u> 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985).   In this context, the analysis of the performance prong is the same, but the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," and not on the fairness of the trial.   <u>Hill</u>, 474 U.S. at 59; <u>see also</u> <u>LaFler</u> 132 S.Ct. at

21

1381 (where a plea offer has been rejected, "the question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance").

It is well-settled that the first part of the <u>Strickland</u> test asks whether "counsel's assistance was reasonable considering all the circumstances."  466 U.S. at 688.  Of course, an attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible sentencing consequences.  <u>Brady v. United States</u>, 397 U.S. 742, 756 (1970).  The law requires counsel to research the relevant law, and facts and to make informed decisions regarding the fruitfulness of various avenues. <u>United States v. Grammas</u>, 376 F.3d 433, 436 (5th Cir. 2004); <u>see also</u> <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.  Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ....").  Beyond that, however, it is exceedingly difficult to define counsel's duties and responsibilities in the plea-bargaining context.  <u>Frye</u>, 132 S.Ct. at 1408.  "The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision."  <u>Premo v. Moore</u>, 562 U.S. ----, ----, 13 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011).  "Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define

detailed standards for the proper discharge of defense counsel's participation in the process." Frye, 132 S.Ct. at 1408.

In order to establish prejudice in the context of a rejected plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385.[9]

In cases where a plea offer has been rejected, application of Strickland's second prong thus requires a showing that there is a reasonable probability that, but for counsel's alleged errors, the defendant would have accepted the plea offer. Frye, 132 S.Ct at 1409; Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995)(when an ineffective-assistance-of-counsel claim concerns the rejection of an offered plea agreement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial)(quoting Hill, 474 U.S. at 58); Toepfer v. United States, 518 Fed.Appx. 834, (11th Cir. 2013)("To prove prejudice in the context of a foregone guilty plea, a prisoner must, at a minimum, establish

---

[9]In Frye, the Supreme Court articulated the standard similarly, as follows:

> Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under [applicable] law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Frye, 132 S.Ct. at 1409.

that there is reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial)(citing Lafler, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012); Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995); see also LaFler, 132 S.Ct. at 1386 ("prejudice can be shown if the loss of a plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence"). Where a defendant was aware of the plea offer, was fully informed of the nature of the charges and potential sentences, and did not object to its rejection, his claim of ineffective assistance of counsel regarding the plea offer fails. See Diaz v. United States, 930 F.2d 832, 834-35 (11th Cir. 1991); Doe v. United States, 2010 WL 1737606, *6-7 (S.D.Ga. 2010); Scott v. United States, 325 Fed.Appx. 822, 824 (11th Cir. 2009)(unpublished).

Finally, with regard to the showing required to establish that the defendant would have accepted the plea offer, the defendant's mere allegation that he or she would have plead guilty, although necessary, is ultimately insufficient to warrant relief. See Cook v. United States, 189 Fed.Appx. 927, 932 (11th Cir. 2006)(defendant's after-the-fact assertion, standing alone, insufficient to establish that defendant would have accepted plea offer)(citing Diaz, 930 F.2d at 835); see also U.S. v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002)(stating that defendant's mere allegation that he or she would have insisted on trial is ultimately insufficient to warrant relief in context where defendant accepted plea offer); Hutchings v. U.S., 618 F.3d 693 (7th Cir. 2010); U.S. v. Farley, 72 F.3d 158, 165 (D.C. Cir. 1995). Rather, in the guilty plea context, the defendant must generally come forward with some objective evidence that he or she would have proceeded differently, but for the alleged misadvice. See Hutchings, 618 F.3d at 697. Indeed, there must be some showing

that the defendant's decision would have been rational under the circumstances.  See Padilla v. Kentucky, 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  As such, the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the result of the proceeding would have been different.  See, generally, Hill, 474 U.S. at 59; Hutchings, 618 F.3d at 697.

Based on the foregoing reasoning, courts have thus routinely found that self-serving statements that a defendant would have pled guilty are insufficient to merit relief.  Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) ("Given [defendant's] awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991) (defendant "must establish through objective evidence that there is a reasonable probability that, but for counsel's advice, he would have accepted the plea" and defendant's self-serving statement that he "would have *** been insane" to reject a guilty plea if properly advised was by itself insufficient to establish prejudice); United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam) (stating that a "defendant's self-serving, post-conviction testimony regarding *** intent with respect to a plea offer" was insufficient by itself to establish prejudice).

Here, Petitioner fails to make any allegations that would overcome the strong presumption that counsel's advice to hold off until she could determine why the State was making such a low offer was deficient.  See Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

25

judgment"). Indeed, accepting as true Petitioner's allegation that counsel told him that the State must have had a "major hole" in its case to make such a low offer, counsel would have arguably performed deficiently in advising Petitioner to blindly accept three (3) years in prison on a case that counsel had reason to believe the State might not have been able to prove at all. See Grammas, 376 F.3d at 436 (the law requires counsel to research the relevant law, and facts and to make informed decisions regarding the fruitfulness of various avenues); see also Von Moltke, 332 U.S. at 721 ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.").

In addition, Petitioner offers nothing other than his own self-serving, after-the-fact assertions that he would have accepted the three (3) year plea. However, as set forth above, it is well-settled that this is insufficient to establish that, but for the alleged misadvice, that Petitioner would have accepted the offer. See Cook, 189 Fed.Appx. at 932 (defendant's after-the-fact assertion, standing alone, insufficient to establish that defendant would have accepted plea); Toro, 940 F.2d at 1068 (a defendant "must establish through objective evidence that there is a reasonable probability that, but for counsel's advice, he would have accepted the plea" and defendant's self-serving statement that he "would have been insane" to reject a guilty plea if properly advised was by itself insufficient to establish prejudice); Gordon, 156 F.3d at 380-81 ("defendant's self-serving, post-conviction testimony regarding intent with respect to a plea offer" is insufficient by itself to establish prejudice).

In Ground Four, Petitioner claims that he was denied effective assistance of counsel under Article I, Section 16 of the Florida Constitution and the Sixth Amendment to the Constitution Of The

United States where defense counsel failed to move to dismiss the charge of burglary, or otherwise object to Petitioner being charged and found guilty of violating previous statutory language of 810.02, where the State failed to provide any evidence of a "remaining in" burglary.

"Because § 2254(b)(3) provides that the State can waive [the] failure to properly exhaust his claim only by expressly doing so, it logically follows that [a] resulting procedural bar, which arises from and is dependent upon the failure to properly exhaust, can only be waived expressly." McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005), citing Franklin v. Johnson, 290 F.3d 1223, 1238 (9th Cir.2002) (O'Scannlain, J., concurring).   Here, Respondent makes a wholly impertinent argument in response to this claim, responding instead to why a totally different claim of ineffective assistance of appellate counsel that Petitioner raised in a state habeas petition fails on the merits.  (DE#11, pp.60-66). However, as Respondent mentions in passing (Id. at 61), Petitioner did raise this claim in his SECOND state motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (DE#11, App.38).   And as the record reflects, that motion was expressly denied on the basis that it was an improper successive motion under state law, that Petitioner had not alleged or shown that this ground for relief could not have been known to him at the time of the earlier motion and that, as such, the motion constituted an unjustified abuse of process under state law. (DE#11, App.41).   Moreover, the record reflects that the trial court's summary denial of Petitioner's second 3.850 motion, wherein Petitioner raised this claim, was affirmed by the appellate court in a per curiam decision.  Orukotan v. State, 212 So. 3d 373 (Fla. Dist. Ct. App. 2016).

Thus, the last state court rejecting this claim of ineffective assistance of counsel clearly and expressly stated that it was

procedurally barred as successive in nature in violation Fla.R.Crim.P. 3.850.[10]  In addition, that decision rested entirely on Florida's procedural bar on untimely and successive 3.850 motions, and was not intertwined with any interpretation of federal law.  Finally, it is beyond dispute that Florida's procedural bar on successive 3.850 motions, absent the specifically enumerated exceptions, is firmly established and regularly followed in Florida.  See Fla. R.Crim. P. 3.850(b), (h).  Moreover, these claims are now prospectively procedurally barred pursuant to state law.  See Fla.R.Crim.P. 3.850(b)(time limitations), (h)(restrictions on successive motions).  Consequently, they are procedurally defaulted for purposes of federal habeas review.  See Mize, 532 F.3d at 1190.

In Ground Five, Petitioner claim that he was denied effective assistance of counsel under Article I, Section 16 of the Florida Constitution and the Sixth Amendment to the Constitution of the United States where defense counsel failed to properly confer with Petitioner concerning accepting or rejecting the State's ten (10) year plea offer after the court offered the Hobson's choice (presumably referring to the options the trial court offered after the discovery violation with regard to the ballistics issue).

Respondent argues that this claim is procedurally barred, because Petitioner raised it for the first time in his second motion for state post-conviction relief pursuant to Rule 3.850, and that the state trial court expressly rejected that motion as abuse of process and an impermissible successive motion under state law. Review of the record reveals that this is indeed where Petitioner first raised this ground of relief. (See DE#33, App.38, 40, 41).

---

[10]In Florida, a District Court of Appeal's per curiam affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990).

And as set forth in the discussion of <u>Ground Four</u> above, the state trial court did indeed expressly reject Petitioner's successive motion, wherein he raised this claim for the first time, on state procedural grounds, and that decision by the trial court was affirmed in a *per curiam* decision by the Court of Appeal. Therefore, this claim is also procedurally barred for the same reasons set forth in the discussion of <u>Ground Four</u>, above.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the 2applicant," and that if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts. Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." <u>Id.</u> Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Habeas Rules.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000). Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner

can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001)(quoting Slack, 529 U.S. at 484). "Each component of the §2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

Having determined that some of Petitioner's claims are barred on procedural grounds and that Petitioner's remaining claims fail on the merits, the court considers whether Petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant motion. After reviewing the issues presented in light of the applicable standard, the court concludes that reasonable jurists would not find debatable the correctness of the court's procedural rulings. The court further concludes that reasonable jurists would not find the court's treatment of any of Petitioner's remaining claims debatable and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is not warranted. See Miller-El, 537 U.S. at 336-38; Slack, 529 U.S. at 483-84; see also Slack, 529 U.S. at 484-85 (each component of the §2253(c) showing is part of a threshold inquiry); Rose, 252 F.3d at 684.

## Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be DENIED, and that no certificate of appealbility be issued.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections to the recommendation that no certificate of appealability be issued.

SIGNED this 12th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Oladotun Orukotan
     L85610
     Hardee Work Camp
     Inmate Mail/Parcels
     6899 State Road 62
     Bowling Green, FL 33834
     PRO SE

     Allen R. Geesey
     Office of the Attorney General
     Criminal Appeals
     1515 North Flagler Drive
     Suite 900
     West Palm Beach, FL 33401

31